In the Matter of the Claim of JAMES E. DALEY, Respondent, against H. C. MINER LITHOGRAPHING COMPANY and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, November 16, 1932.

*Frank L. Ward*, for the appellants.

*John J. Bennett, Jr., Attorney-General* [*Joseph A. McLaughlin, Assistant Attorney-General*, and *Hector A. Robichon* of counsel], for the respondents.

RHODES, J. The Industrial Board has found that on August 25, 1930, claimant was employed as a stone pressman and became disabled as the result of lead poisoning, while engaged in the regular course of his employment; that the lead poisoning which disabled claimant was contracted within twelve months prior to his disability.

A disability award has been made for a period of twelve weeks from August 25, 1930. This award the appellants question upon the sole ground that the evidence shows that claimant did not contract lead poisoning within one year prior to August 25, 1930.

At the hearing two physicians were called and their testimony is in substantial agreement to the effect that the disability of the claimant was the result of lead poisoning caused by the absorption of lead into his system through a long period of years; that during all of that period he had lead poisoning, by which is meant the presence of quantities of lead in his system; that his disability on August 25, 1930, resulted from the fact that his

system had accumulated so much lead that it had reached the saturation point and was not able to eliminate the poison sufficiently in proportion to the quantity absorbed, by reason of which claimant suffered an acute attack of lead poisoning as the result of exacerbation of his condition of chronic lead poisoning.

Section 40 of the Workmen's Compensation Law, as it then existed, provided that " Neither the employee nor his dependents shall be entitled to compensation for disability or death resulting from disease unless the disease is due to the nature of his employment and contracted therein, or in a continuous employment similar to the one in which he was engaged at the time of his disablement, within the twelve months previous to the date of disablement, whether under one or more employers."

In a memorandum of decision signed by a member of the Industrial Board, it is stated that the finding of the Board that the lead poisoning which disabled the claimant was contracted within twelve months prior to the beginning of the disability " is based upon the ground that there is a distinction between lead absorption and lead poisoning which is generally recognized in the more recent literature dealing with lead poisoning as an occupational disease. Lead absorption may occur in greater or lesser degree without any signs of toxic effect. Only when such absorption has reached the point of toxicity can it properly be called ' lead poisoning.' In the present case it is true that * * * while he may have had more or less lead in his system, it was not in a toxic amount. It was not until his lead absorption had again reached the point of toxic amount that he again became disabled at the time for which compensation is now claimed."

There is no proof in the record as to the recent literature referred to which it is claimed recognizes a distinction between lead absorption and lead poisoning. The testimony in the record is directly contrary to the statement contained in the memorandum of decision. According to the evidence, during all the period of claimant's employment he had some lead in his system, sufficient in quantity to constitute lead poisoning, although not sufficient to produce an acute attack and disability.

We are thus brought to an examination of the statute to ascertain under what conditions an award is allowed.

Paragraph 2 of subdivision 2 of section 3 includes lead poisoning or its sequelæ among the enumerated occupational diseases for which compensation is permitted.

It will be noted that section 40 makes a distinction between disablement and disease. Section 38 makes a similar distinction, for it provides that " the *disablement* of an employee resulting

from an occupational *disease* described in subdivision two of section three shall be treated as the happening of an accident \* \* \*."

It is not the contracting of the disease which is the accident, but it is the disablement arising therefrom.

The statute does not define what lead poisoning is, but the physicians called have defined lead poisoning as the presence of lead in the system. It is undisputed that claimant had lead in his system during all the time for a period of years, to an extent characterized by the physicians as chronic lead poisoning, although not amounting to disablement. There is nothing, therefore, in the evidence to show that such lead poisoning was contracted within the year prior to claimant's disablement. For this reason the claim has not been brought within the provisions of the statute and the award is unauthorized.

The award should be reversed and the claim dismissed.

VAN KIRK, P. J., and HINMAN, J., concur; HILL, J., dissents, with an opinion; McNAMEE, J., not voting.

HILL, J. (dissenting). The claimant had worked for the employer many years. His work brought him in direct contact with lead or its preparations or compounds. He suffered an acute attack of lead poisoning due to the employment. (Workmen's Comp. Law, § 47.) The Board found, upon proper evidence, that he became disabled on August 25, 1930. "The disablement of an employee resulting from an occupational disease described in subdivision two of section three shall be treated as the happening of an accident within the meaning of this chapter and the procedure and practice provided in this chapter shall apply to all proceedings under this article, except where specifically otherwise provided herein." (Workmen's Comp. Law, § 38.)

Given the accident, there is a presumption that the claim comes within the provisions of the act. (Workmen's Comp. Law, § 21.) This includes the presumption that the disease was contracted within twelve months previous to the date of disablement. In this case the presumption is sustained by claimant's attending physician who says that it is difficult to tell just when claimant contracted lead poisoning, as experience shows certain cases where acute manifestations develop within a week after exposure, while others pile up lead for years and never have any acute manifestations. "When I saw this man first he was acutely ill and I believe it was due .to lead poisoning; \* \* \* he has gotten clinically well so that he can resume work. \* \* \* There is no way I can prove there was a starting point; \* \* \*. The only way I could explain it in my own mind — the way I explain it to myself,

is that this man is getting older, his process of elimination, his ability to handle these things, is poorer."

There are fifteen or more kinds of poisoning among the occupational diseases for which compensation is allowed. (Workmen's Comp. Law, § 3, subd. 2, as amd. by Laws of 1929, chaps. 64, 298; since amd. by Laws of 1930, chap. 60.) These diseases are usually contracted by absorption through the pores. Absorption may be gradual, extending over years, during which the employee suffers no inconvenience. In such cases there can be no compensation if we are to determine that the disease begins when absorption begins, for it will have been contracted more than twelve months before disability, and until there is disability no compensation is payable.

I favor affirmance.

Award reversed and claim dismissed, with costs against the State Industrial Board.