RUFFERTSHAFER *v.* ROBERT GAGE COAL CO.

1. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASES—SILICOSIS.
   Silicosis is a disease coming within the provisions of the occupational disease act amendatory of the workmen's compensation act (Act No. 61, Pub. Acts 1937, amending Act No. 10, Pub. Acts 1912 [1st Ex. Sess.]).

2. WORDS AND PHRASES—SILICOSIS DEFINED.
   Silicosis is a chronic condition of the lungs caused by inhalation of air containing finely divided particles of silica in sufficient quantity and over a sufficient period of time to produce fibrous nodules in the walls of the alveoli.

3. EVIDENCE—JUDICIAL NOTICE—JOURNALS OF THE LEGISLATURE.
   The Supreme Court will take judicial notice of the journals of the legislature.

4. STATUTES—REJECTION OF PROPOSED AMENDMENTS.
   Legislative journals of session in which occupational disease amendment to the workmen's compensation act was enacted showing rejection by each house of proposed amendment to bill as introduced extending coverage of silicosis if disability resulted within *two years* after last injurious exposure *held,* to show that provision for liability only in case the occupational disease was contracted within *12 months* previous to disablement was deliberately chosen (Act No. 10, pt. 7, §§ 2, 5, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

5. WORKMEN'S COMPENSATION—SILICOSIS—TIME WITHIN WHICH DISEASE WAS CONTRACTED.
   Since under the occupational disease amendment of the workmen's compensation act the liability of the employer is to be determined as of the date of disablement of the employee, latter was not entitled to compensation for silicosis where it was stipulated that there was no evidence that disease was contracted within 12 months previous to the date of disablement (Act No. 10, pt. 7, §§ 2, 5, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

6. COSTS—CONSTRUCTION OF STATUTE.

> No costs are allowed on appeal in proceeding to recover workmen's compensation for silicosis where award is reversed and construction of occupational disease amendment to workmen's compensation act is involved (Act No. 61, Pub. Acts 1937, amending Act No. 10, Pub. Acts 1912 [1st Ex. Sess.]).

Appeal from Department of Labor and Industry. Submitted October 12, 1939. (Docket No. 129, Calendar No. 40,789.) Decided December 19, 1939.

Martin Ruffertshafer presented his claim against Robert Gage Coal Company, employer, for compensation for alleged contraction of silicosis while in defendant's employ. Award to plaintiff. Defendant appeals. Reversed.

*James E. Morrison,* for plaintiff.

*Emil Anneke,* for defendant.

POTTER, J.   June 22, 1938, plaintiff gave notice to defendant of a claim for injury and on August 5th applied for compensation under the occupational disease statute (Act No. 61, Pub. Acts 1937 [amending Act No. 10, Pub. Acts 1912 (1st Ex. Sess.)], claiming he was suffering from silicosis contracted while in the employ of defendant; that such disease resulted from the nature of his employment; that the last injurious exposure to the hazards of this disease occurred after October 29, 1937; and that he was then a trip rider in defendant's coal mine. This application was supported by the affidavit of Dr. Horowitz that plaintiff was suffering from silicosis.

Defendant answered, admitting plaintiff had silicosis but denying the disease was contracted while in its employ, that it resulted from the nature of the employment by defendant or that his condition was

in any way aggravated or the symptoms induced by the nature of his employment by defendant, and alleging that if plaintiff was suffering from silicosis it was not contracted while in the defendant's employ. It denied plaintiff's last injurious exposure to the hazards of silicosis was after October 29, 1937, and denied the nature of plaintiff's work constituted an exposure to the hazards of silicosis. It admitted he was employed as a trip rider in defendant's coal mine, but alleged the nature of his work did not expose him to the hazards of silicosis. Defendant denied plaintiff's stoppage of work March 28, 1938, was caused by disability incurred in defendant's employ, and denied such stoppage of work was caused by silicosis. It admitted plaintiff's daily wage at the time of the stoppage of work was $6 a day.

The deputy commissioner of the department of labor and industry awarded plaintiff compensation at $18 a week for total disability from March 28, 1938, to January 14, 1939. On review by the department of labor and industry, the award of the deputy commissioner was affirmed. Defendant appeals, claiming the department erred in holding plaintiff entitled to compensation under Act No. 10, pt. 7, § 5, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–5, Stat. Ann. § 17.224), when the occupational disease from which he became disabled was not contracted within one year from the date of disability but was contracted from 5 to 10 years previous to date of disability, when he had not been continuously employed by defendant in a like or similar employment since contraction of the disease. The facts are stipulated as follows:

"Plaintiff commenced work for the defendant, the Robert Gage Coal Company, in 1919 and continued

for seven or eight years. He farmed for a year or two and then worked for the Consolidated Coal Company for about seven years. He re-entered the defendant's employ on June 2, 1937, and worked until the last of March, 1938. His employment with the Consolidated Coal Company and with the defendant was as a coal miner. He has silicosis and is disabled thereby. The date of his disablement was March 31, 1938. The silicosis is due to the nature of his said employment and was contracted therein. There is no evidence that it was contracted within 12 months previous to the date of disablement. The record indicates that it had been in existence or had its beginning from 5 to 10 years previous to such date.''

Silicosis is a disease coming within the specific terms of Act No. 10, pt. 7, § 2, Pub. Acts 1912 (1st Ex. Sess.) as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–2, Stat. Ann. § 17.221).

''Silicosis is caused by breathing into the lungs particles of silica dust. The particles lodge on the lining membrane and by chemicalization pass through the lining, causing tissue damage and the formation of nodules. It is not certain how many particles must lodge, or over what period of time, to cause the disease. These two factors are reciprocal variants. The nodules increase in size and density, the rapidity depending upon factors such as the individual's physical characteristics, his economic situation, and the duration and intensity of exposure. Experience shows the average time of exposure and development into a disability to be 10 years.'' 24 California Law Review, pp. 594, 595.

See, also, 33 Monthly Labor Review (1933), p. 99.

''Silicosis, in simple lay language, is caused by breathing silica dust. Tiny particles of silica, too fine to be seen even with a good microscope, are

breathed into the lungs. A chemical action leads nature in self-defense to build a wall of fibre around the poison. An increasing number of these fibrous lumps—'Nodules' to you and the X-ray man—gradually block off the blood supply and finally the air-passageways. Distressing shortness of breath and finally plain suffocation may result. Naturally the victims are 'susceptible' to tuberculosis which carries off about three-fourths of them while pneumonia gets another 15 per cent. Enlarged hearts from attempting to force blood through hardening arteries, completes the story." Andrews, The Tragedy of Silicosis (1936), 26 American Labor Legislation Review, p. 4.

"It develops slowly and inexorably, symptoms are latent and may not appear until long after X-ray signs of silicosis are demonstrable, oftentimes years after the employment ceases. Because of the insidious and progressive nature of the disease the worker is usually unaware of it and his physician frequently overlooks it." 20 Cornell Law Quarterly, p. 393.

"The rate at which silicosis develops under the same conditions varies with different persons. In general it may be said that in individuals working in dust containing 5,000,000 particles of pure silica per cubic foot it would require from 5 to 20 years for the development of demonstrable silicosis. * * * Concentrations of dust in which there are more than 100,000,000 particles per cubic foot of air are extremely hazardous, and this has been called by Cummings the 'secondary threshold,' a value above which silicosis might be expected to develop with great rapidity. Under such conditions nodular fibrosis might occur in as short a time as two years. As a general rule from 15 to 20 years working exposure to 15,000,000 or 20,000,000 particles of pure crystalline silica are required to produce demonstrable silicosis." Cecil, Textbook of Medicine (4th Ed.), p. 884.

"A chronic condition of the lungs caused by inhalation of air containing finely divided particles of silica ($SiO_2$) in sufficient quantity and over a sufficient period of time to produce fibrous nodules in the walls of the alveoli, which are readily recognizable in roentgenographs of the chest and in pathological specimens. Clinically, the process is recognizable as a disease only in its advanced stages, either by increased dyspnea on exertion or by the symptoms of tuberculosis to which it predisposes." Cecil, Textbook of Medicine (4th Ed.), p. 883.

Senate bill No. 106 of 1937 (senate enrolled Act No. 28) as originally introduced in the senate provided:

"SEC. 5. Neither the employee nor his dependents shall be entitled to compensation for disability or death resulting from such occupational disease, unless such occupational disease is due to the nature of his employment and was contracted therein, or in a continuous employment similar to the one in which he was engaged at the time of his disablement, within twelve months previous to the date of disablement, whether under one or more employers. The time limit for contraction of the occupational disease prescribed by this section shall not bar compensation in the case of an employee who contracted such occupational disease in the same employment with the same employer by whom he was employed at the time of his disablement and who had continued in the same employment with the same employer from the time of contracting such occupational disease up to the time of his disablement thereby."

This court will take judicial notice of the journals of the legislature. *People, ex rel. Drake,* v. *Mahaney,* 13 Mich. 481; *Callaghan* v. *Chipman,* 59 Mich. 610; *Attorney General* v. *Rice,* 64 Mich. 385; *Wilson* v. *Atwood,* 270 Mich. 317; *Remus* v. *City of Grand*

*Rapids,* 274 Mich. 577. The senate during the time this bill was pending before it considered a proposed amendment to provide for coverage of silicosis if disability resulted within two years after the last injurious exposure. 1 Senate Journal (1937), p. 441. This proposed amendment was rejected. 1 Senate Journal (1937), p. 448. After the bill was transmitted to the house, it had before it a similar proposed amendment which was once adopted (1 House Journal [1937], pp. 892–895), but this amendment was later rejected by the house (2 House Journal [1937], pp. 1267–1272) and the bill passed by the house without amendment (2 House Journal [1937], p. 1298), and in that condition it was approved and signed by the governor.

It is evident the legislature deliberately chose the limitation contained in Act No. 10, pt. 7, § 5, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, which provides there shall be no liability unless such occupational disease was contracted within 12 months previous to the date of disablement, and to have rejected the proposal that compensation benefits on account of silicosis should be payable only in the event of such disability or death resulting within two years after the last injurious exposure.

Legislation awarding compensation for occupational diseases arising out of and in the course of the workman's employment is not new. In many States statutes worded substantially like the workmen's compensation act in Michigan are construed to cover occupational diseases. *Re Johnson's Case,* 217 Mass. 388 (104 N. E. 735); *Baltimore Dry Docks & Shipbuilding Co.* v. *Webster,* 139 Md. 616 (116 Atl. 842). Twenty-one States now have statutes expressly allowing compensation for occupational diseases (14

Indiana Law Journal, p. 542), though in many jurisdictions the statutes are so worded as to limit recovery (24 California Law Review, p. 594; 14 Indiana Law Journal, p. 542; 22 Marquette Law Review, p. 113).

In this State, the liability of the employer is to be determined as of the date of the disablement of the employee. Act No. 10, pt. 7, § 5, Pub. Acts 1912 (1st Ex. Sess.) as added by Act No. 61, Pub. Acts 1937, provides that the employee shall not be entitled to compensation for disability resulting from such occupational disease unless the disease is due to the nature of the employment, was contracted therein or in a continuous employment similar to the one in which the workman was engaged at the time of his disablement "within twelve months previous to the date of disablement, whether under one or more employers."

The stipulation filed in this case in relation to the contraction of the disease is:

"There is no evidence it was contracted within 12 months previous to the date of disablement."

The stipulation is in the language of the statute.

New York has a statute similar to that of Michigan. It has been construed. *Daley* v. *H. C. Miner Lithographing Co.,* 236 App. Div. 549 (261 N. Y. Supp. 189) ; same case, 262 N. Y. 542 (188 N. E. 56).

The Michigan statute says the disease must have been contracted within 12 months previous to the date of disablement. The stipulation filed says there is no evidence the disease was contracted within 12 months previous to the date of disablement. It being so stipulated, there is no testimony to bring the case within the provisions of Act No. 61, Pub. Acts 1937. The New York occupational disease statute in

this particular is identical with the Michigan statute and it has received the same construction. *Crowley v. Yonkers Herald Publishing Co.*, 250 App. Div. 670 (296 N. Y. Supp. 173), affirmed 275 N. Y. 571 (11 N. E. [2d] 758); *Lais v. Isaac Goldman Co.*, 252 App. Div. 905 (299 N. Y. Supp. 687); 71 C. J. p. 602.

The award of the department of labor and industry is reversed, but without costs, the construction of a statute being involved.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.