SECRETARY OF STATE v STATE TREASURER

Docket No. 58846. Submitted October 6, 1981, at Lansing.—Decided
    January 27, 1982. Leave to appeal applied for.

The Secretary of State brought an action for mandamus in the
    Court of Appeals, seeking modification of the opinion of the
    Court of Appeals in *Southeastern Michigan Transportation
    Authority (SEMTA) v Secretary of State,* 104 Mich App 390
    (1981). SEMTA, the County Road Association of Michigan, and
    the Oakland and Wayne County Road Commissions moved to
    intervene, which motions were granted. *Held:*

1. The authority to levy use taxes on motor vehicle registra-
    tions and title transfers in Wayne, Oakland, and Macomb
    Counties, pursuant to the Metropolitan Transportation Author-
    ities Act, expired as of April 16, 1981.

2. The collection of such taxes shall cease.

3. Any such taxes collected after April 15, 1981, and placed
    in escrow with the Department of Treasury pursuant to the
    decision of of the Court of Appeals in 104 Mich App 390, and
    interest thereon, shall be returned to the taxpayers.

4. The costs incurred by the Secretary of State and the
    Department of Treasury in returning such monies shall be
    credited to the Departments of State and Treasury from the
    escrow account.

5. All such taxes collected prior to April 15, 1981, plus
    interest, shall continue to be held in escrow pending compli-
    ance with the terms and conditions set forth in 104 Mich App
    390.

J. J. KELLEY, J., concurred. He would hold that the authority
    to levy the use taxes expired on November 15, 1980, because
    the written agreement between the City of Detroit and SEMTA
    to merge their respective public transportation systems was
    insufficient to comply with the deadline requirements of the
    Metropolitan Transportation Authorities Act. However, he is

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 145, 146, 265.
[2] 71 Am Jur 2d, State and Local Taxation § 8.
[3-5] 68 Am Jur 2d, Sales and Use Taxes § 176.

willing to join Judge M. J. KELLY in holding that the expiration date is April 16, 1981, and concurs in the manner of distribution of the tax funds held in escrow.

Mandamus granted.

ALLEN, P.J., dissented. He would hold that the authority to levy use taxes has not expired because SEMTA and the City of Detroit met the deadline requirement for agreement to merge as contained in the Metropolitan Transportation Authorities Act and because that act contained no expiration date subsequent to the execution of such an agreement. He would hold further that because the parties subsequently failed to merge in fact as specified in the act and because no expiration date is specified within the act upon such an occurrence it is for the Legislature to decide whether the authority to tax has ceased. He would deny mandamus.

OPINION OF M. J. KELLY, J.

1. STATUTES — JUDICIAL CONSTRUCTION.

A court, in construing a statute, must ascertain and give effect to the legislative intent; a statute must be read as a whole so as to harmonize the meaning of its separate provisions and to avoid absurd results.

2. STATUTES — TAXATION — JUDICIAL CONSTRUCTION.

Ambiguities in a tax statute should be construed in favor of the taxpayer.

3. TAXATION — METROPOLITAN TRANSPORTATION AUTHORITIES ACT — TERMINATION OF POWERS — LEGISLATIVE INTENT.

The Metropolitan Transportation Authorities Act which authorized the levy of a use tax in Wayne, Oakland, and Macomb Counties to benefit public transportation and provided for the termination of the authorization to tax should the City of Detroit and the Southeastern Michigan Transportation Authority fail to agree to merge their transportation systems by November 15, 1980, and which additionally provided for an extension of the authority if the systems were merged by April 16, 1981, must be construed to provide for the complete termination of the authority to collect the tax if the merger in fact had not occurred by April 16, 1981 (MCL 124.416a; MSA 5.3475[116a]).

OPINION OF J. J. KELLEY, J.

4. TAXATION — METROPOLITAN TRANSPORTATION AUTHORITIES ACT —
   TERMINATION OF POWERS — LEGISLATIVE INTENT.

*The Legislature intended that the authority to levy a use tax for public transportation in Wayne, Oakland, and Macomb Counties should terminate on November 15, 1980, upon the failure of the City of Detroit and the Southeastern Michigan Transportation Authority to agree in writing to merge their transportation systems by that date (MCL 124.416a; MSA 5.3475[116a]).*

DISSENT BY ALLEN, P.J.

5. TAXATION — METROPOLITAN TRANSPORTATION AUTHORITIES ACT —
   TERMINATION OF POWERS — LEGISLATIVE INTENT.

*The 1980 amendment to the Metropolitan Transportation Authorities Act relative to the termination of the authority to levy use taxes for public transportation in Wayne, Oakland, and Macomb Counties indicates no termination date based on failure to merge, and any decision regarding such termination should be left to the Legislature (1980 PA 89; MCL 124.416a; MSA 5.3475[116a]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso, Patrick McElmurry,* and *David L. Balas,* Assistants Attorney General, for plaintiff Secretary of State, and *Patrick F. Isom,* Assistant Attorney General, for defendant Department of Treasury.

*Downs, Zagaroli & Downs, P.C.,* and *Walter Clements,* for Southeastern Michigan Transportation Authority.

*L. W. McEntee,* for Oakland County Road Commission.

*Bodman, Longley & Dahling* (by *Joseph A. Sullivan),* for Wayne County Road Commission.

*Miller, Canfield, Paddock & Stone* (by *John D. Pirich),* and *John P. Cushman,* for County Road Association of Michigan.

Before: ALLEN, P.J., and M. J. KELLY and J. J. KELLEY,* JJ.

M. J. KELLY, J. I cannot agree with Judge AL-LEN's holding that the Southeastern Michigan Transportation Authority (SEMTA) tax should continue until the Legislature establishes a termination date. As I read the legislation in question, the tax expired on April 16, 1981.

In an effort to merge the SEMTA and City of Detroit mass transit systems, the Legislature established a tax which would expire three years from the effective date of the act if a merger agreement was not reached. As the expiration date approached, the Legislature amended the act, and it presently reads in part:

"(5) This section shall expire November 15, 1980, unless the transportation system of the city of Detroit has a written merger agreement with the transportation system of the southeastern Michigan transportation authority.

"(6) If, before April 16, 1981, the transportation system of the city of Detroit has been merged with the transportation system of the southeastern Michigan transportation authority, this section shall expire April 15, 1982." 1980 PA 89; MCL 124.416a; MSA 5.3475(116a).

The 1980 amendment changed the dates and the aim of the legislation. Instead of establishing one date for the merger of the systems, it established one date for entering into a written agreement to merge, and one date for the merger. However, the Legislature never set a date for the expiration of the tax if a merger agreement were entered into

* Circuit judge, sitting on the Court of Appeals by assignment.

but the merger did not take place by April 16, 1981.

When construing a statute, the court must ascertain and give effect to the legislative intention. *Production Credit Ass'n of Lansing v Dep't of Treasury,* 404 Mich 301, 311; 273 NW2d 10 (1978). Legislative enactments must be read as a whole so as to harmonize the meaning of their separate provisions. *Washtenaw County v Saline River Intercounty Drainage Board,* 80 Mich App 550, 555; 264 NW2d 53 (1978), *lv den* 402 Mich 944 (1978). Statutes must be construed to avoid absurd results. *In the Matter of Karen Marable,* 90 Mich App 7, 10; 282 NW2d 221 (1979), *lv den* 407 Mich 871 (1979). Finally, ambiguities in a statute imposing a tax are interpreted in favor of the taxpayer. *E F MacDonald Co v Dep't of Treasury,* 62 Mich App 626, 632, fn 2; 233 NW2d 678 (1975).

In this case, the legislative intent in passing 1980 PA 89 was to encourage the City of Detroit and SEMTA to merge their mass transportation systems. To accomplish this, the Legislature established two dates. If a written merger agreement were reached before November 15, 1980, the tax would continue. If the systems actually had merged by April 16, 1981, the tax would continue. To allow the tax to continue after April 16, 1981, even though the merger has not occurred, is patently contradictory. This result frustrates the legislative purpose of 1980 PA 89. Under such an interpretation, the impetus to merge is devitalized because the tax would continue until the Legislature acted. Therefore, the merger which the Legislature clearly sought is thwarted. I find that the SEMTA tax terminated on April 16, 1981, because SEMTA and the City of Detroit failed to merge their mass transit systems.

I turn now to the consequences of the concurrence of Judge J. J. KELLEY who agrees that the taxes in question have expired. Though he believes they expired at an earlier date, his opinion leaves no doubt but that a majority of this panel conclude that as of April 16, 1981, the authority to levy a $2.50 registration fee and a $6 title fee on motor vehicles registered or transferred in Wayne, Oakland, and Macomb Counties expired. Therefore, it becomes necessary to address the relief requested by the Secretary of State in his original action for mandamus filed with this Court.

As noted in the first paragraph of Judge ALLEN's minority opinion, the Secretary of State asks that this Court modify its opinion in *Southeastern Michigan Transportation Authority v Secretary of State,* 104 Mich App 390; 304 NW2d 846 (1981),[1] in three respects: (1) order that the collection of SEMTA taxes cease immediately; (2) order that SEMTA taxes collected *after* April 15, 1981, and deposited in the escrow account, plus interest earned thereon, be returned to the individuals who paid the tax; and (3) order that the costs of the Secretary of State and the Department of Treasury, in returning said sums, be deducted from the escrow account.

A majority of this panel having determined that the authority to levy SEMTA taxes ceased as of April 16, 1981, it is hereby ordered:

1. That the collection of SEMTA taxes shall

---

[1] In *SEMTA v Secretary of State, supra,* 410, this Court held that the SEMTA taxes were constitutional and directed that they continue to be collected and placed in an escrow account established by this Court, and that disbursements from such escrow account should "not be made until the Legislature and the Department of Transportation take whatever action is necessary to assure that no more than 10%" of the funds is distributed for comprehensive transportation purposes as required by Const 1963, art 9, § 9.

cease upon the issuance of final process by the clerk of this Court, as provided in GCR 821.3.[2]

2. That SEMTA taxes collected *after* April 15, 1981, and subsequently deposited into the escrow account, plus the interest earned thereon after April 15, 1981, be returned to those individuals who paid those taxes.

3. That the costs of the Secretary of State and Department of Treasury, in returning said monies collected after April 15, 1981, be credited to the Department of State and the Department of Treasury from the escrow account.

4. That all SEMTA taxes collected through April 15, 1981, plus the interest earned thereon, continue to be held in the escrow account and not be disbursed until the terms and conditions set forth in *SEMTA v Secretary of State, supra,* have been complied with.

Mandamus granted pursuant to the order of this Court. No costs, a public question being involved.


J. J. KELLEY, J. *(concurring).* I agree with Judge M. J. KELLY that the SEMTA taxes have expired. However, I write separately because I believe they expired on November 15, 1980. Nevertheless, since the power to levy the taxes in question already had expired by April 16, 1981, I am pleased to join Judge M. J. KELLY in holding that the expiration date is April 16, 1981, and that all sums collected thereafter and placed in the escrow account, plus interest thereon, less costs to the Secretary of State and the Department of Treasury in return-

---

[2] ".3 Final Process. Final process to which any party may be entitled upon a decision, judgment, or order of the Court of Appeals shall be issued by the clerk not less than 20 nor more than 30 days from the time of the entry of such decision, judgment or order unless otherwise ordered by the Court or unless application for rehearing timely filed is pending."

ing such monies, be returned to the persons paying such tax.

Judge ALLEN's very thorough dissenting opinion states the history of this litigation and frames all the issues. I do not agree that the November 14, 1980, "agreement" made by the Detroit transportation system and SEMTA was a "merger agreement" within the contemplation of the 1980 amendment of § 16a(4) and (5).

In 1967, the Legislature passed Act 204, allowing for creation of metropolitan transit authorities. This act was amended by 1976 PA 266, adding thereto § 16a which provided for financing the acquisition or improvement and operation of public transportation facilities in a transportation district by imposing taxes on vehicles and on the transfer of motor vehicle titles.

Section 16a also required the deposit of revenue from the taxes in a separate account in the state treasury to be returned on a quarterly basis to the authority in the area in which a transportation district has been created. For years such revenue has accumulated.

To forestall endless collection of the taxes without corresponding benefits from a merged transit system, the Legislature set deadlines in subsections (5) and (6) of § 16a:

"(5) This section shall expire 3 years after the effective date of this amendatory act unless the transportation system of the city of Detroit has been merged with the southeastern Michigan transportation authority.

"(6) If, within 3 years after the effective date of this amendatory act, the transportation system of the city of Detroit has been merged with the southeastern Michigan transportation authority, this section shall expire 5 years after the effective date of this amendatory act." 1976 PA 266.

In 1979, the Legislature changed the deadlines:

"(5) This section shall expire April 15, 1980, unless the transportation system of the city of Detroit has been merged with the transportation system of the southeastern Michigan transportation authority.

"(6) If, before April 16, 1980, the transportation system of the city of Detroit has been merged with the transportation system of the southeastern Michigan transportation authority, this section shall expire April 15, 1982." 1979 PA 68.

For the obvious purpose of speeding the merger or, alternatively, of stopping the collection of taxes, the Legislature, on April 14, 1980, gave immediate effect to again-changed deadlines:

"(5) This section shall expire November 15, 1980, unless the transportation system of the city of Detroit has a written merger agreement with the transportation system of the southeastern Michigan transportation authority.

"(6) If, before April 16, 1981, the transportation system of the city of Detroit has been merged with the transportation system of the southeastern Michigan transportation authority, this section shall expire April 15, 1982." 1980 PA 89.

When read together, as they must be, these latest deadlines disclose the Legislature's intent to be that the written merger agreement provide for a completed merger before April 16, 1981.

The two units mentioned in § 16a(5) and (6) never merged. Under the date of November 14, 1980, they executed a "Merger Agreement". Therein the parties stated that it is entered into "for the purpose of satisfying Act 204 and its amendments * * *". However, it contains no provision for a merger to be completed before April

16, 1981, the final deadline. Contrariwise, it provides for a necessary merger vote by the Detroit citizenry before November 30, 1982, over 18 months past the deadline.

Further, the agreement specifically requires financial assistance from the state as a "condition precedent" to merger.

The agreement also expressly states that it is only a temporary agreement, to remain in effect until a full written merger agreement would be made by the parties at some unspecified future time:

"This MERGER AGREEMENT shall remain in effect from the date of execution hereto until there has been executed a subsequent written agreement between the parties hereto addressing the ten point merger conditions (Exhibit C) of Coleman A. Young, Mayor of the City of Detroit, and the SEMTA Board of Directors' Resolution FY 80-97, adopted on December 18, 1979 (Exhibit D), which are attached and such other further matters as may from time to time be negotiated in an effort to satisfy the mandates contained in Exhibit A."

The two units never completed the essential "merger" portion of the agreement.

Such a document reasonably could not have been contemplated by the Legislature as meeting the deadline imposed in the last amendment of § 16a(5) and (6). No merger took place. Neither of the last two deadlines had been met as of April 16, 1981.

ALLEN, P.J. *(dissenting)*. By original action filed with this Court on July 15, 1981, the Secretary of State seeks to have this Court modify its opinion in *SEMTA v Secretary of State,* 104 Mich App 390; 304 NW2d 846 (1981), by ordering: (1) the collection of SEMTA taxes should cease immediately; (2)

SEMTA taxes collected after April 15, 1981, and deposited into the escrow account, plus interest earned thereon, be returned to the individuals who paid the tax; and (3) costs of the Secretary of State and the Department of Treasury, in returning said monies, be deducted from the escrow account and credited to the Secretary of State and Department of Treasury.

Since the time to entertain motions for rehearing had passed and this Court had not retained jurisdiction in the case, the motion was docketed as an original complaint for mandamus. All parties previously involved in *SEMTA v Secretary of State, supra,* hereinafter referred to as SEMTA I, filed motions to intervene. Intervention was granted by orders of this Court on August 6-7, 1981, together with permission for intervenors to file briefs in support of, or in opposition to, the issues raised in plaintiff's complaint.

The issues considered in SEMTA I are different from the issues presented in the instant action, hereinafter referred to as SEMTA II. SEMTA I involved the constitutionality of the SEMTA taxes. This case concerns the authority of the Secretary of State to *continue* to collect SEMTA taxes. A $2.50 registration fee and a $6 title fee on motor vehicles registered or transferred in Wayne, Oakland, and Macomb Counties (these being known as the SEMTA taxes) was authorized by 1976 PA 266, which amended 1967 PA 204 by adding § 16a, MCL 124.416a; MSA 5.3475(116a). Section 16a in turn was amended by 1979 PA 68 and by 1980 PA 89. At the center of the instant dispute is the meaning of subsections 5 and 6 of § 16a, 1980 PA 89, governing the expiration date of the SEMTA tax.

Plaintiff maintains that the power to tax expired

on November 15, 1980, because the written agreement between the City of Detroit and SEMTA was not a "written merger agreement" as intended by the Legislature in § 16a(5) of 1979 PA 68, and further argues that, as no merger took place as of April 16, 1981, the Legislature intended that collection of the tax should cease on April 16, 1981. Defendant State Treasurer takes no position on the termination date of the statute. Intervening defendant SEMTA contends that the statute has not expired and thus opposes the granting of the relief sought by plaintiff. Intervening defendant Oakland County Road Commission agrees with plaintiff that SEMTA taxes expired on November 15, 1980. Intervening defendants County Road Association of Michigan (CRAM) and Wayne County Road Commission take no position on the expiration date of the statute but argue that all SEMTA funds collected and escrowed under the decision in SEMTA I should continue to be held in escrow and should not be released. Because this Court's order authorizing intervention limited the issues raised to the date of expiration of the SEMTA taxes, the issue raised by CRAM is not before this Court and is not addressed. Thus, for purposes of this case, two issues emerge: (1) did the SEMTA taxes expire on November 15, 1980, because the written agreement between the City of Detroit and SEMTA was not the type of agreement contemplated by § 16a(5) of 1979 PA 68, and (2) did the SEMTA taxes expire on April 16, 1981, because the transportation system of the City of Detroit had not merged with SEMTA as of that date.[1]

Before addressing the issues raised, a chronology of the statutory changes involved is necessary.

---

[1] For additional details of the statutory history of SEMTA tax legislation see *SEMTA v Secretary of State, supra,* 394-396.

SEMTA taxes were first authorized by 1976 PA 266. Sections 16a(5) and (6) of that statute clearly stated, and the litigants hereto agree, that the taxes so authorized would expire on April 15, 1980, unless the transportation system of the City of Detroit (D-DOT) had been merged with SEMTA by that date but would not expire until April 15, 1982, if merger had occurred by April 15, 1980.

In 1979, the Legislature passed 1979 PA 68 which amended §§ (5) and (6), *supra,* to read as follows:

"(5) this section shall expire April 15, 1980, unless the transportation system of the city of Detroit has been merged with the transportation system of the southeastern Michigan transportation authority.

"(6) If, before April 16, 1980, the transportation system of the city of Detroit has been merged with the transportation system of the southeastern Michigan transportation authority, this section shall expire April 15, 1982."

In essence, 1979 PA 68 reaffirmed the earlier expiration dates of April 15, 1980, if merger had not taken place, or April 15, 1982, if merger had transpired. Then on April 14, 1980, just one day before the SEMTA taxes were to expire since no merger had transpired as yet, the Legislature changed the termination dates by amending §§ 16a(5) and (6) to read:

"(5) This section shall expire November 15, 1980, unless the transportation system of the city of Detroit has a written merger agreement with the transportation system of the southeastern Michigan transportation authority.

"(6) If, before April 16, 1981, the transportation system of the city of Detroit has been merged with the transportation system of the southeastern Michigan

transportation authority, this section shall expire April 15, 1982." 1980 PA 89.

The parties do not dispute the accuracy of the statutory background recited above. They do, however, reach opposite conclusions as to the legislative intent to be gleaned therefrom. In particular, they disagree as to what the Legislature intended when, upon enacting 1980 PA 89, it made the recent amendments to § 16a(5) and (6). MCL 124.416a(5), (6); MSA 5.3475(116a)(5), (6).

I. *Did the SEMTA taxes expire on November 15, 1980, because the written agreement between SEMTA and D-DOT was not a "written merger agreement" within the expressed language and intent of 1980 PA 89?*

In the seven-month period between April 14, 1980 (the effective date of 1980 PA 89), and the expiration date of SEMTA taxes on November 15, 1980, the City of Detroit and SEMTA conducted extended negotiations. On November 14, 1980, a written merger agreement was signed by the City of Detroit and SEMTA officials. The agreement consists of some six and one quarter typed, legal size pages, plus attached exhibits A through F. Following the customary boiler plate "whereas" clauses, the agreement provides that merger may be accomplished by any one of three methods: (1) acquisition; (2) consolidation; (3) integration; or by a combination thereof. The agreement then provides:

"THE MERGED SYSTEM

"Recognizing the public benefit to be gained, the PARTIES agree that the City's public transportation system and the Authority's system shall be consolidated and or integrated in accordance with the terms and

conditions of Act 204, this Merger Agreement and the Tri-Party Agreement attached hereto as Exhibit A."

Pages four, five, and six of the document set forth seven basic policies upon which the parties agree, namely: (1) that the parties will pursue long-term financing at federal, state, and local levels, which might be required to finance a regional transportation system; (2) that the State of Michigan will enact legislation picking up the unfunded accrued pension liability of D-DOT; (3) that in accordance with the charter of the City of Detroit, a vote of the people will be held prior to the conveyance of D-DOT to the authority, said vote to be held no later than November 30, 1982; (4) that the parties guarantee equity for all their employees as to wages, benefits, and conditions of employment; (5) that the parties reaffirm their commitment not to discriminate against any employee or applicant for employment; (6) that if a conflict should be found between the terms of the merger agreement and governing law, labor agreements, or existing contracts, the latter will prevail; (7) that the parties will continue to participate in activities necessary to achieve an integrated system of public transportation.

Plaintiff argues that because the document lists three possible methods of merger, the City of Detroit and SEMTA did not agree in what manner a merger is to take place, and thus the agreement lacks the specificity and conclusiveness which the Legislature intended when it enacted 1980 PA 89. I disagree.

The Legislature drew a clear distinction between a "written merger agreement" and an "actual merger". Nothing in the statute requires that the former be an inflexible, unalterable, detailed plan. To so require would obliterate this distinction and

impose on the parties an obligation to enter into the actual merger contract. Instead, I read the statute as providing that the parties should agree upon the general terms and conditions on which merger would eventually take place. In the period between agreement to merge and actual merger, the parties would secure the necessary financing, agree on details, and comply with other conditions precedent. The agreement therefore possesses that degree of specificity which the Legislature contemplated.

Plaintiff further contends that the agreement is invalid because it sets forth certain conditions which must be met before merger takes place. In particular, it is argued that the conditions precedent, numbers (1) and (2), relating to federal funding and the state's assuming the unfunded pension liability of D-DOT, are beyond the pale. Again I disagree. From the very beginning, it has been obvious that substantial funding would be required from the federal, state, and local governments. This the Legislature was well aware of. To hold that the agreement was not valid because the parties placed in writing the need for third-party funds is totally unrealistic.

The Secretary and the Oakland County Board of Road Commissioners level their principal attack on item 10 of the agreement. That section reads as follows:

"This MERGER AGREEMENT shall remain in effect from the date of execution hereto until there has been executed a subsequent written agreement between the parties hereto addressing the ten point merger conditions (Exhibit C) of Coleman A. Young, Mayor of the City of Detroit, and the SEMTA Board of Directors' Resolution FY 80-97, adopted on December 18, 1979 (Exhibit D), which are attached and such other further

matters as may from time to time be negotiated in an effort to satisfy the mandates contained in Exhibit A."

The City of Detroit's merger conditions found in Exhibit C are:

"1. Level of City bus service is set (at minimum) in K. Any diminution is only allowable by 2/3 vote of the City Council and Mayor.

"2. Subway and DPM[2] assured—after federal and state commitments.

"3. Employees assured of job, wages, benefits, and working conditions.

"4. Fare structure (zone) shall be based on Detroit (center of concentric circles).

"5. State assumes DOT pension system (including past service obligation).

"6. City gets fair value of system.

"7. Must be 'ratified' by vote of people of Detroit.

"8. Reverter clause.

"9. City government or citizens of Detroit shall not be assessed nor taxed more than any other municipality in region.

"10. Long term financing of operations must be assured."

SEMTA's merger conditions appear in Exhibit D. Though couched in different language, they are similar to the City of Detroit's conditions 2 through 7 and 10. They are not inconsistent as to conditions 1 and 9. Of particular import are the final three paragraphs of the SEMTA resolution which read:

"AND BE IT FURTHER RESOLVED that a full and complete merger of D-DOT and SEMTA shall occur at the time that (a) financing for long-term operations becomes assured; (b) there are binding state and federal commit-

---

[2] Downtown People Mover.

ments for final engineering and construction of a Downtown People Mover and for a light rail system; and (c) the state agrees to assume the D-DOT pension system, including assets and liabilities;

"AND BE IT FURTHER RESOLVED that the SEMTA Board and the City of Detroit shall work together to assure that all of these crucial steps shall be implemented as soon as possible and further that areas of coordination toward merger shall begin immediately and proceed expeditiously;

"AND BE IT FURTHER RESOLVED that the Chairman of the SEMTA Board is authorized to sign a concurring agreement with the Governor of the State and the Mayor of the City of Detroit, accepting the foregoing conditions, steps, and charges inherent to merger."

Contrary to Oakland County Road Commission's claim that the agreement discloses no meeting of the minds,[3] the agreement, when read as a whole, expresses a meeting of the minds that merger will occur upon the happening of certain events. While the conditions prescribed in the agreement are substantial and require substantial funding from third parties, this does not invalidate the agreement. Conditions precedent are normally a common component of contracts. Moreover, although there is some question about the constitutionality of Detroit's condition 5, the agreement clearly specified that should any condition be contrary to law, the law would prevail. Neither can it be said that such conditions are contrary to legislative

[3] "The expressed language of the purported merger agreement and the attachments thereto (Exhibit A) dispells and destroys any concept that there was a meeting of the minds of the Mayor of Detroit and the SEMTA Board as to the joining together of the two systems by that document. In fact, the express language of the purported agreement clearly demonstrates that there has been a meeting of the minds of the Mayor of Detroit and the SEMTA Board that *no merger will occur at all,* at any time in the future unless the State of Michigan and the United States Government meet and comply with the conditions and demands agreed upon by the Mayor of Detroit and the SEMTA Board."

intent, particularly when it was common knowledge that substantial third-party funding would be required. Recognizing that amendments to acts are relevant in ascertaining legislative intent, *Kizer v Livingston County Board of Comm'rs,* 38 Mich App 239, 250; 195 NW2d 884 (1972), I believe the 1980 amendment indicates that the Legislature intended to permit the parties to enter into a flexible merger agreement, such as that now before us, before actual merger would take place. Accordingly, a majority of the panel holds that SEMTA taxes did not expire on November 15, 1980.

II. *Did the SEMTA taxes expire on April 16, 1981, because D-DOT had not been merged with SEMTA as of that date?*

Having decided that the tri-county SEMTA taxes did not expire on November 15, 1980, we turn to the issue of whether the taxes expired on April 16, 1981. The Attorney General, on behalf of the Secretary, argues that, upon enacting 1980 PA 89, the Legislature intended to have a written merger agreement by November 15, 1980 (§ 16a[5]), and a merger by April 16, 1981 (§ 16a[6]), *or else the taxes would expire.* In arriving at this conclusion, the Secretary and Oakland County Road Commission each admit that "while a literal reading of § 16a(6) reveals no expiration date if no merger takes place", common sense admits no other conclusion. In response, SEMTA argues:

"In fact, there is absolutely nothing in the statute which speaks to the SEMTA tax expiring on April 16, 1981. The statute simply states that if there was *[sic]* an actual merger before April 15, 1981, the tax would expire on April 15, 1982. The only interpretation that can be given if there is *not* a merger before April 16, 1981, is that the tax would *not* expire April 15, 1982.

"Michigan case law makes it absolutely clear that

where the language of a statute is plain and unambiguous, no interpretation is necessary. * * * *Acme Messenger Service Co v Unemployment Compensation Comm,* 306 Mich 704 [11 NW2d 296] (1943)."

Read literally, and as construed by SEMTA, the 1980 amendment produces the following result:

"1. If there is no written merger agreement by November 15, 1980, the tax expires on that date.

"2. If SEMTA and D-DOT reach a written merger agreement by November 15, 1980, the tax continues.

"3. If there is a written merger agreement by November 15, 1980, and an actual merger takes place by April 16, 1981, the tax expires on April 15, 1982.

"4. If there is a written merger agreement by November 15, 1980, and no merger takes place, *the tax does not expire and will not expire until further legislative action.*

According to the Attorney General, a literal reading of the statute is ludicrous and flies in the face of the obvious legislative pupose, *i.e.,* that the Legislature intended that the parties proceed to merge. The Attorney General contends that it is inconsistent to conclude that if the parties merged the tax would expire in April, 1982, but if the parties did not merge the tax would continue.

Where a literal reading of a statute will lead to absurd results or create a situation contrary to the apparent intention of the Legislature, the words of the statute will be modified to admit the legislative intent.

"The literal interpretation of the words of an act should not prevail *if it creates a result contrary to the apparent intention of the legislature* and if the words are sufficiently flexible to admit of a construction which will effectuate the legislative intention. The intention prevails over the letter, and the letter must if possible

be read so as to conform to the spirit of the act. 'While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words.' Thus words or clauses may be enlarged or restricted to harmonize with other provisions of an act. The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense were they intended to be understood or what understanding do they convey as used in the particular act." 2A Sutherland, Statutes and Statutory Construction (4th ed), § 46.07, pp 65-66. (Emphasis supplied.)

The above rule has been followed in numerous cases. *Williams v Secretary of State,* 338 Mich 202, 208; 60 NW2d 910 (1953), *Magreta v Ambassador Steel Co,* 378 Mich 689; 148 NW2d 767 (1967), *Shulevitz v Dep't of Treasury,* 78 Mich App 655; 261 NW2d 31 (1977), and *People v McDowell,* 85 Mich App 697; 272 NW2d 576 (1978).

The problem in the instant case is that 1980 PA 89 does not state when SEMTA taxes will expire if, as occurred here, the parties execute a written merger agreement prior to November 15, 1980, but actual merger has not yet occurred. We are left to surmise what the Legislature intended. The parties have placed before us two different expiration dates: (1) April 15, 1981, as contended by plaintiff and intervenor Oakland County Road Commission; or (2) no expiration date until the Legislature acts, as contended by SEMTA.

The difficulty with the first suggested date is that it requires this Court to hold that the Legislature intended a termination date which the Legislature deleted. Only if § 16a(5) is construed as continuing to contain the April 15, 1981, deadline for merger expressly set forth in § 16a(5) of 1979 PA 68, can this Court conclude that the taxes

expired on April 15, 1981. However, that date was stricken in 1980 PA 89. This Court cannot insert into the statute that which the Legislature deleted. Where the Legislature amends a statute and uses different language, it does so for a purpose. *Oakwood Hospital Corp v State Tax Comm*, 24 Mich App 138, 143; 180 NW2d 88 (1970). The fallacy of the Secretary's position is that it would write into the statute the very date which the Legislature removed.

A second ground for finding that the special taxes did not expire on April 15, 1981, is its apparent inconsistency with § 16a(4). As Senate Bill 965 (which upon passage became 1980 PA 89) was wending its way through the Legislature, a new provision was added that 20% of the revenue from the taxes imposed under the statute and collected after April 15, 1980, "shall be credited to cities, villages, and townships" within the tri-county area for comprehensive transportation purposes.[4] This new provision is further explained in the second bill analysis of SB 965 made by the House Legislative Analysis Section on May 13, 1980:

"THE CONTENT OF THE BILL:

"The surcharges would expire November 15, 1980, unless Detroit and SEMTA have signed a written merger agreement. As amended by the Senate and the House Taxation Committee, the bill would also require that 20 percent of the revenue collected after April 15, 1980, go to local governments for dial-a-ride programs. The remaining 80 percent would go to SEMTA for operating purposes."

---

[4] Comprehensive transportation is defined by law to mean rapid transit, bus, rail, and people movers. It is distinguished from conventional transportation purposes which includes road construction and highway maintenance. *SEMTA v Secretary of State, supra*, 402-403.

Figures supplied the Court by the Office of Hearings and Legislation of the Secretary of State indicate that as of April 15, 1981, SEMTA taxes collected and placed in escrow were: vehicle registration fees $3,882,308.50, title transfers $3,887,035, making a total escrow account of $7,769,343.50. Of this, 20% or $1,553,868 is to "be credited" to[5] local units of government in Wayne, Oakland, and Macomb counties for comprehensive transportation purposes.

It strains credulity to believe that the Legislature would establish this new source of funding for local units of government commencing on April 15, 1980, and at the same time intend that the provision would come to an abrupt halt just one year later if actual merger had not occurred. It strains belief even more that the Legislature would terminate aid to local units of government without setting a date for such termination in the statute. Yet that is precisely what will happen if the interpretation urged by plaintiff is adopted. Statutes are to be construed in their entirety and the meaning given one section arrived at after due consideration of other sections so as to produce, if possible, a harmonious whole. *Williams, supra, Scholten v Rhoades,* 67 Mich App 736; 242 NW2d 509 (1976).

A third, and even more persuasive, reason for concluding that the special taxes did not expire on April 15, 1981, is that extrinsic evidence indicates that the Legislature itself believes the authority to tax remains alive and vibrant. In SEMTA I, we opined that 1980 PA 89 was not unconstitutional

---

[5] The language "shall be credited to" has been interpreted by the Secretary of State and SEMTA not to require cash but instead to require services in lieu of cash. Thus, 20% of the escrow amount has not and will not be paid to local units of government in cash, but services in that amount are to be provided to local units by SEMTA.

but was technically defective as to its disbursement provisions. We suggested that the defect could be corrected by legislative amendment. SEMTA I, *supra*, 410. Several bills have been introduced in the House to correct the defect pointed out in our opinion. Among them was HB 4936, introduced by Representative Mary Brown, and HB 5307. Both bills treated the SEMTA taxes as continuing in operation. Each was introduced as an amendment to 1980 PA 89. If the Legislature believed the SEMTA taxes had expired on April 15, 1981, or on November 15, 1980, the bills would not have been introduced as amendments, but as bills to reestablish an expired tax.

More significantly, HB 5307 was reported out of the Committee on Taxation on December 7, 1981. On December 16, 1981, it was debated on the floor, amended in certain respects, and passed by a vote of 100-0. House J No 128, pp 2918-2919. As passed and sent to the Senate, the bill assures that the special automobile registration fees and transfer taxes collected in the tri-county area as well as *future distribution of these taxes* will be distributed according to the 90/10 formula in the Michigan Constitution.

The Legislature is presumed to know the existing law and to have legislated in harmony with it. *People v Harrison*, 194 Mich 363, 369; 160 NW 623 (1916). While HB 5307 has yet to be passed by the Senate, the fact that the Committee on Taxation as well as the House of Representatives unanimously treated the SEMTA taxes as ongoing and viable, matters of which we may take judicial notice,[6] indicates a legislative intent that the abil-

---

[6] Judicial notice may be taken of journals of the Legislature. *Ruffertshafer v Robert Gage Coal Co*, 291 Mich 254; 289 NW 151 (1939). 3 Callaghan's Michigan Pleading & Practice (2d ed), § 36.38, p 382.

ity to levy such taxes did not expire on April 15, 1981.

A third interpretation of the statute, one consonant with legislative intent to compel merger, is possible. One might conclude that, upon enacting § 16a(5) of 1980 PA 89, the Legislature intended that the April 15, 1982, date terminates the power to collect the taxes, regardless of whether merger has occurred.

However, the narrow issue before us is not whether or when taxing authority expires at some time in the future. The question before us is whether such authority expired on November 15, 1980, when the parties reduced to writing a merger agreement, or expired on April 15, 1981. For the several reasons heretofore set forth, and particularly because the Legislature itself appears to treat the taxes in question as ongoing, this Court would err were it to conclude that expiration occurred either on November 15, 1980, or on April 15, 1981.

At this late date it would be a mistake for this Court to interrupt the ongoing decisional process of the Legislature. When one chamber of the Legislature has already passed a bill which treats the taxes in question as not having expired and when the statute as it is now worded is susceptible to more than one interpretation, I believe this Court would err grievously to conclude that the taxes under consideration had expired and order a return of the sums collected. Far better that the Legislature make the decision and clarify its intent itself. There remains time in which this may be done. Bills to effectuate such intent, including HB 5307, are pending.

The relief prayed for by the plaintiff should be denied.