DISTEL v DEPARTMENT OF MENTAL HEALTH

Docket No. 71763. Submitted July 16, 1984, at Lansing.—Decided November 5, 1984.

Plaintiffs, Allen and Hope Distel, John and Patricia Baker, and others, brought an action in the Oakland Circuit Court seeking an injunction to prevent defendants, Michigan Department of Mental Health, Macomb-Oakland Regional Center, and others, from establishing in their neighborhood a group home for developmentally disabled persons. The plaintiffs alleged that the defendants failed to comply with the statute requiring the Department of Mental Health to seek advice and consultation from the township in which the home was to be located before planning and locating the home. The trial court, Fred M. Mester, J., granted the Department of Mental Health's motion for summary judgment and entered an order accordingly. Plaintiffs appeal. *Held:*

The record shows that the Department of Mental Health fully complied with the statute.

Affirmed.

1. MENTAL HEALTH — SPECIALIZED RESIDENTIAL SERVICES — PLANNING — LOCATION.

The Michigan Department of Mental Health is required, before planning and locating a specialized residential service, including a residential home, in a city, village or township, to seek the advice and consultation of the governing body of the city, village and township in which the specialized residential service is proposed to be located (MCL 330.1244[g]; MSA 14.800[244][g]).

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning § 159.

Applicability and application of zoning regulations to single residences employed for group living of mentally retarded persons. 32 ALR4th 1018.

[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 140.

[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 140, 277.

[4] 75 Am Jur 2d, Statutes § 145.

[5] 82 Am Jur 2d, Zoning and Planning § 38.

2. TOWNSHIPS — TOWNSHIP BOARD.
   The governing body of a township is the township board, of which the township supervisor is a member (MCL 41.70; MSA 5.62).

3. TOWNSHIPS — TOWNSHIP SUPERVISOR.
   The township supervisor is the agent of the township for the transaction of all legal business and upon whom all processes against the township must be served (MCL 41.64a; MSA 5.56).

4. STATUTES — JUDICIAL CONSTRUCTION.
   The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature; to that end a statute will receive a construction which effectuates its purpose rather than one which leads to absurd results.

5. MENTAL HEALTH — SPECIALIZED RESIDENTIAL SERVICES — PLANNING — LOCATION.
   The intent of the Legislature in enacting the statute requiring the Michigan Department of Mental Health to seek advice and consultation before planning and locating a specialized residential service in a community was to provide local governing bodies with a meaningful opportunity to express their views concerning the establishment of group homes in their communities; the opportunity must be given after planning commences but before the department is irrevocably committed to the establishment of a group home at the proposed site (MCL 330.1244[g]; MSA 14.800[244][g]).

*Michael P. Hatty,* for plaintiffs on appeal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Thomas R. Wheeker,* Assistants Attorney General, for the Department of Mental Health and Macomb-Oakland Regional Center.

Before: DANHOF, C.J., and D. E. HOLBROOK, JR., and C. W. SIMON,* JJ.

C. W. SIMON, J. In this action, plaintiffs sought to obtain an injunction preventing the establishment in their neighborhood of a group home for

* Circuit judge, sitting on the Court of Appeals by assignment.

developmentally disabled persons. The circuit court denied plaintiffs the relief they requested, and plaintiffs appeal as of right.

Plaintiffs argue that the Department of Mental Health failed to comply with MCL 330.1244(g); MSA 14.800(244)(g), which imposes the following requirement upon the department:

"Before planning and locating a specialized residential service as defined in section 300, including a residential home, in a city, village, or township, and *[sic]* seek the advice and consultation of the governing body of the city, village, and township, in which the specialized residential service is proposed to be located."

We first note that the statute merely requires the department to *seek* advice and consultation; it does not require the department to *obtain* or *heed* such advice and consultation. Plaintiffs' argument that to comply with the statute the department had to obtain a discussion of the group home at a public meeting before the township board is therefore without merit. Moreover, the record shows that such a public meeting was, in fact, held.

The statute does not prescribe any particular method by which the advice and consultation of the local governing body is to be sought. The site of the group home at issue is in White Lake Township. The governing body of a township is the township board, of which the township supervisor is a member. MCL 41.70; MSA 5.62. The township supervisor is the agent of the township for the transaction of all legal business and upon whom all processes against the township must be served. MCL 41.64a; MSA 5.56. The township supervisor is therefore the logical person for the department to contact in seeking the advice and consultation of the township board. Plaintiffs' argument that con-

tacts with the township supervisor were insufficient to satisfy the statute is without merit.

Plaintiffs argue that the department's contacts with the township board through the township supervisor were untimely. The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature; to that end a statute will receive a construction which effectuates its purpose rather than one which leads to absurd results. See, for example, *Williams v Secretary of State,* 338 Mich 202, 207-208; 60 NW2d 910 (1953). The manifest intention of the Legislature in enacting this statute was to provide local governing bodies with a meaningful opportunity to express their views concerning the establishment of group homes in their communities. To effectuate this purpose while retaining a workable system, the opportunity must be given after planning commences but before the department is irrevocably committed to the establishment of a group home at the proposed site. To require the department to seek the advice of the local governing body before any planning begins would lead to an absurd result; before the department formulates plans, the local governing body has nothing about which to express its views. This interpretation of the statute is confirmed by the language employed by the Legislature; the department must seek advice and consultation of the local governing body "before planning *and locating"* the group home, not merely "before planning".

The record here shows that in December, 1980, the department advised the township board of its plans to establish group homes in the area. In June, 1981, the department consulted with the township board concerning plans to establish a group home at another site in the township. Those plans came to nothing, and the township board

was informed of the department's plans concerning the site at issue here at a meeting between department officials and the township supervisor on April 14, 1982. Plaintiffs claim that the department had already leased the site when this meeting was held. This claim, however, is not supported by the record. Although the lease was nominally dated March 31, 1982, the signatures on the lease document were dated May 18, 1982. The lease document shows on its face that it did not receive the necessary approval from state officials until mid-June, 1982. Testimony in the circuit court confirms this interpretation of the lease document.

The record shows that the Department of Mental Health fully complied with MCL 330.1244(g); MSA 14.800(244)(g). Our opinion should not be read as indicating whether or not plaintiffs had standing to raise this issue.

Affirmed. No costs, a public question being presented.