## WILLIAMS v. SECRETARY OF STATE.

1. STATUTES—CONSTRUCTION—AMENDMENT.
   The legislature, in amending one section of a statute, is presumed to have intended that in its amended form such section should be construed in connection with other provisions of the law and in harmony therewith.

2. SAME—CONSTRUCTION—RELATION OF A PORTION TO THE ENTIRE ACT.
   The language of a particular section or sections of a statute must be read in the light of the purpose of the legislature in its enactment as indicated by provisions of the law relating to the subject matter.

3. SAME—PURPOSE OF INTERPRETATION.
   The primary purpose of interpreting a statute is to ascertain and give effect to the intention of the legislature.

4. SAME—CONSTRUCTION—UNAMBIGUOUS LANGUAGE.
   A bare reading of a statute suffices and no interpretation is necessary if the language employed in a statute is plain, certain and unambiguous.

5. SAME—CONSTRUCTION OF ENTIRE ACT.
   An entire act must be read and the interpretation given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole.

6. SAME—CONSTRUCTION OF PART OF ACT.
   One part of a statute must not be so construed as to render another part nugatory or of no effect.

REFERENCES FOR POINTS IN HEADNOTES
[1, 5]  50 Am Jur, Statutes § 349.
[2, 3]  50 Am Jur, Statutes § 303 *et seq.*
[4]  50 Am Jur, Statutes § 225.
[5, 6]  50 Am Jur, Statutes § 357 *et seq.*
[7]  50 Am Jur, Statutes § 235 *et seq.*
[8, 9]  Generally as to recount of elections, see 18 Am Jur, Elections §§ 256, 315, 316.
[10]  14 Am Jur, Costs §§ 23, 91.

7. SAME—CONSTRUCTION—ORDINARY MEANING.

A construction may be put upon a part of a statute other than would be accorded by its ordinary meaning and grammatical construction, where latter leads to a manifest contradiction of the apparent purpose of the enactment or to some inconvenience or absurdity, hardship or injustice, presumably not intended.

8. ELECTIONS—RECOUNTS—COUNTERPETITION—RECOVERY OF DEPOSIT.

Fact that statutory provisions specifically authorized repayment to petitioner for recount of an election of statutory deposit made only when he established fraud or mistake and party seeking recount receives a certificate of election would not preclude party who filed counterpetition from recovering deposit he had made after he had received certificate of election upon withdrawal of both petition and counterpetition (CL 1948. § 189.1, as amended by PA 1951, No 213, § 189.3).

9. SAME—RECOUNTS—CONSTRUCTION OF STATUTES.

Statute relating to recounts of elections is construed as imposing equal obligations on, and giving like privileges to, candidates filing original recount petitions and those presenting counterpetitions (CL 1948, § 189.1, as amended by PA 1951, No 213, § 189.3).

10. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTES.

No costs are allowed in mandamus proceeding involving issues of statutory construction and a question of general public concern.

Mandamus by G. Mennen Williams and Democratic State Central Committee of Michigan to compel Owen J. Cleary, Secretary of State, to refund money deposited with counterpetition for recount of 1952 general election. Submitted September 9, 1953. (Calendar No. 45,831.) Writ granted November 27, 1953.

*Alfred B. Fitt,* for plaintiffs.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Russell A. Searl,* Assistant Attorney General, for defendant.

CARR, J. The facts in this proceeding are not in dispute. At the general election held November 4, 1952, Governor G. Mennen Williams was a candidate for re-election. The returns to the board of State canvassers, made pursuant to statute by local election officials, indicated that he had received the highest number of votes cast for the office of governor. Thereupon the candidate receiving the next highest number of votes filed a petition, in accordance with pertinent provisions of part 4, chap 19 of the Michigan election law,* demanding a recount of various precincts throughout the State. Governor Williams, hereinafter referred to as the plaintiff, then filed a counterpetition asking in terms for recounts in all precincts, other than those in which voting machines were used, not covered by the original recount petition, and deposited in connection therewith the sum of $12,500, estimated on the statutory basis of $5 for each precinct. It was subsequently determined that plaintiff's counterpetition covered 1908 precincts and that, in consequence, the amount deposited exceeded the required sum by $2,960. Said sum was returned to plaintiff and is not involved in this controversy.

Before the completion of the recounts demanded, the candidate filing the original petition requested leave to withdraw it. Thereupon plaintiff filed a like request as to his counterpetition, reserving at the time the right to demand a return of the amount of his deposit. The requests were granted and the recount proceedings terminated. A certificate of election was then issued to plaintiff. A demand for the return of the deposit made by plaintiff was denied as to the sum of $9,540 covering the 1908 precincts in which he had sought a recount. The present mandamus proceeding followed, plaintiff claiming

* PA 1925, No 351, as amended (CL 1948, § 145.1 et seq. as amended [Stat Ann and Stat Ann 1951 Cum Supp § 6.1 et seq.]).

that he is entitled to the full amount of his deposit under statutory provisions hereinafter quoted. On behalf of defendant the right to such return is denied, on the theory that the legislature in the enactment of the election law and the amendments thereto failed to make provision therefor.

The primary question at issue is, as above indicated, one of statutory construction. Part 4, chap 19, § 1, of the election law, being CL 1948, § 189.1 as amended by PA 1951, No 213 (Stat Ann 1951 Cum Supp § 6.540), reads as follows:

"Sec. 1. Any candidate voted for at any election for an office, the votes for which are canvassed by the board of State canvassers, who considers himself aggrieved on account of any fraud or mistake in the canvass of the votes by the inspectors of election or the returns made by said inspectors, or of any county canvassing board, may, not later than 2 days after the final certification and determination of the State board of canvassers, present to and file with the secretary of State a written or printed petition which shall be sworn to by such candidate, setting forth as near as may be the nature and character of the fraud or mistakes complained of, and the townships, cities or counties, or the precincts thereof, in which they exist, which petition shall pray for a correction thereof by a recount of the votes cast therein, and any counterpetition shall be filed in like manner within 24 hours thereafter: Provided, That any candidate at any general or special election for a seat in the legislature, intending to file a contest in accordance with the rules of either house of the legislature, shall make the deposit of money required by this act with the clerk of the house or the secretary of the senate, as the case may be, and shall file 2 additional copies of any petition required by this act with the clerk of the house or the secretary of the senate, as the case may be, and the ballots in any precinct petitioned for recount in any legislative contest shall not be recounted for that office by any board of canvass-

ers but shall be preserved until the contest is disposed of under the rules of the legislative body concerned."

Section 3 of the chapter (CL 1948, § 189.3 [Stat Ann § 6.542]) governs the matter of deposits required from candidates demanding recounts, and the refunding thereof in certain cases. As last amended by PA 1931, No 200, it reads:

"Sec. 3. The candidate or elector presenting such petition to the secretary of State shall at the same time deposit with such officer the sum of 5 dollars for each precinct in which a recount of the votes is demanded. If by reason of such recount, the petitioner succeeds in establishing fraud or mistake as set forth in his petition and receives a certificate of election or establishes sufficient fraud or mistake to change the result upon any proposition, the votes for and against which were recounted, the money deposited by him shall be refunded. In event no refund is made as herein required, then the secretary of State shall pay to the treasurer of each county its proportionate share of such deposit based upon the number of precincts in such county in which the votes were recounted."

It may be noted that the recount provisions of the election law as originally enacted in 1925 contained, in section 1 of part 4, chap 19, no provision for the filing of a counterpetition. The clause now appearing therein with reference to such action was inserted by PA 1937, No 308. Counsel for defendant suggest that since the provisions of section 3 as to refunds were not then, or later, amended, it may be inferred that the legislature did not have in contemplation the making of a refund to a candidate filing a counterpetition, under circumstances of the character involved in the case at bar. We do not understand, however, that there is any claim on the part of defendant that section 3 should be construed as

not requiring the making of the prescribed deposit, by one filing a counterpetition, in the sum of $5 for each precinct to be recounted. As above stated, such deposit was made by plaintiff and was accepted. It is a fair conclusion, under established rules of statutory construction, that the legislature, in amending section 1, intended that in its amended form it should be construed in connection with other provisions of the law and in harmony therewith.

The statutory language in controversy here must be read in the light of the purpose of the legislature in its enactment as indicated by provisions of the law relating to the subject matter. In *City of Grand Rapids* v. *Crocker,* 219 Mich 178, 182, 183, it was said:

"There seems to be no lack of harmony in the rules governing the interpretation of statutes. All are agreed that the primary one is to ascertain and give effect to the intention of the legislature. All others serve but as guides to assist the courts in determining such intent with a greater degree of certainty. If the language employed in a statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary. The rule is no less elementary that effect must be given, if possible, to every word, sentence and section. To that end, the entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole.

" 'No rule is better settled than, in construing a statute, effect must be given to every part of it. One part must not be so construed as to render another part nugatory, or of no effect. The same rule applies to words in construing a sentence.' *People* v. *Burns,* 5 Mich 114."

The Court further quoted with approval the following from Endlich on the Interpretation of Statutes, § 295.

" 'Effect to be Given to True Intent of Act. Modification of Language.—Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it, which modifies the meaning of the words, and even the structure of the sentence. This is done, sometimes, by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction that the legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language, and really give the true intention. The ascertainment of the latter is the cardinal rule, or rather the end and object, of all construction; and where the real design of the legislature in ordaining a statute, although it be not precisely expressed, is yet plainly perceivable, or ascertained with reasonable certainty, the language of the statute must be given such a construction as will carry that design into effect, even though, in so doing, the exact letter of the law be sacrificed, or though the construction be, indeed, contrary to the letter.' "

See, also, *Gardner-White Co.* v. *State Board of Tax Administration,* 296 Mich 225; *In re Petition of Bryant,* 323 Mich 424; *Ballinger* v. *Smith,* 328 Mich 23.

Counsel for defendant emphasize the specific language of section 3, above quoted, contending that no refund may be allowed unless fraud or mistake is shown and unless the party seeking the recount re-

ceives a certificate of election by reason thereof.  As before noted, the recounts demanded by the petition and counterpetition in this case were not completed, the proceedings being discontinued at the requests of the candidates, and the certificate of election was issued to plaintiff on the basis of the original returns as canvassed by the board of State canvassers.  Acceptance of the strictly literal interpretation urged in defendant's behalf would necessarily lead to the conclusion that the plaintiff is not entitled to a refund regardless of the fact that it was determined that he had been elected to the office in controversy.  We do not think that such result is consistent with the general purpose of the legislature as indicated by the statutory provisions in question.  The general intent is fairly disclosed that a candidate petitioning for a recount, who is successful in the final outcome of the matter, shall be entitled to a refund of his deposit.  The language of the phrase "by reason of such recount," stressed by counsel for defendant, must be read in the light of such intent.  It may not be given the interpretation urged.  It may not be assumed that the legislature had in mind that candidates filing counterpetitions should be denied a right granted to those filing original petitions.  Had it been the purpose to create any distinction or difference in this respect, we may assume that it would have been clearly expressed.  In the absence of such expression the statute may not be interpreted as implying it, but rather as imposing equal obligations on, and giving like privileges to, candidates filing original recount petitions and those presenting counterpetitions.

Under settled rules of statutory construction, referred to in the cases above cited and consistently adhered to by this Court, plaintiff is entitled to the return of the sum of $9,540, but without interest.  Inasmuch as the case involves issues of statutory con-

struction and is of general public concern, no costs are allowed. The writ sought will issue if necessary.

Dethmers, C. J., and Adams, Butzel, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.