STATE TREASURER v WILSON

Docket No. 73877. Argued June 4, 1985 (Calendar No. 10).—Decided November 12, 1985.

The State Treasurer, on behalf of the Department of Corrections, brought an action in the Wayne Circuit Court against Hardy Wilson and the National Union Fire Insurance Company of Pittsburgh, seeking reimbursement under the Prison Reimbursement Act of workers' compensation benefits awarded to Mr. Wilson pursuant to an order of redemption. At the time of the order, Mr. Wilson was an inmate at the Jackson State Prison. The court, Sharon Tevis Finch, J., held the Prison Reimbursement Act- void for vagueness and violative of equal protection. The Court of Appeals, T. M. BURNS, P.J., and GRIBBS and HOEHN, JJ., affirmed in an opinion per curiam (Docket No. 68790). The plaintiff appeals.

In an opinion by Chief Justice WILLIAMS, joined by Justices LEVIN, CAVANAGH, and BOYLE, the Supreme Court held:

The Prison Reimbursement Act was intended to apply to all inmates of the state penal system and was not limited to the inmates of the three penal institutions named in the act and in existence at the time of its passage; nor is the act violative of the constitutional guarantee of equal protection.

1. The Prison Reimbursement Act provides for the reimbursement of the state for the care and maintenance of prisoners in state penal institutions. Under the act, the warden of a penal institution must notify the auditor general, *inter alia,* of the name of each prisoner and the prisoner's financial responsibility. Upon a prisoner's admission to a penal institution, a claim may be made by the state and an order entered by the court in which the prisoner was sentenced against the prisoner's estate or property for future maintenance and support.

2. The act, although referring in a procedural section by name to the three penal institutions in existence at the time of its passage in 1935, when read in its entirety, clearly was intended to apply to all prison inmates, including those in

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Penal and Correctional Institutions §§ 11 *et seq.*
See the annotations in the ALR3d/4th Quick Index under topic Prisons and Convicts.

institutions which would become operational after 1935. The section in which the institutions are named does not provide that the inmates of the institutions must reimburse the state for future maintenance and support, but, rather, directs the wardens of the institutions relative to implementing the act's provisions. There is no suggestion in the language of the act that the reference to the institutions was intended to restrict the scope of the act or to prevent its future application to inmates of prisons not in existence at the time of the act's passage.

Reversed and remanded.

Justice BRICKLEY, joined by Justices RYAN and RILEY, dissenting, stated that the statute at issue is clear on its face and needs no interpretation. Where a statute is clear and specific, the Court need not and should not speculate on legislative intent.

132 Mich App 648; 347 NW2d 770 (1984) reversed and remanded.

OPINION OF THE COURT

1. PRISONS AND PRISONERS — PRISON REIMBURSEMENT ACT — EQUAL PROTECTION.

The Prison Reimbursement Act was intended to apply to all inmates of the state penal system and was not limited to the inmates of the three penal institutions named in the act and in existence at the time of its passage; nor is the act violative of the constitutional guarantee of equal protection (US Const, Am XIV; Const 1963, art 1, § 2; 1935 PA 253, MCL 800.401 et seq.; MSA 28.1701 et seq.).

DISSENTING OPINION BY BRICKLEY, J.

2. PRISONS AND PRISONERS — PRISON REIMBURSEMENT ACT.

The Prison Reimbursement Act was intended to apply only to the inmates of the three penal institutions named in the act and in existence at the time of its passage (1935 PA 253, MCL 800.401 et seq.; MSA 28.1701 et seq.).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *E. David Brockman* and *Gary Kress,* Assistant Attorneys General, for the plaintiff.

*Goodman, Eden, Millender & Bedrosian* (by *William H. Goodman)* for defendant Wilson.

Williams, C.J. The equal protection question presented in this case depends ultimately upon whether the Legislature intended 1935 PA 253, the Prison Reimbursement Act, to apply only to inmates of the three penal institutions named in the act, or to all inmates of the state prison system.

Defendants contend that the reference by name to the three penal institutions existing at the time of enactment of 1935 PA 253 means that the Legislature intended the act to apply only to those three prisons and not to any institutions later added to the corrections system. We hold that, while 1935 PA 253 referred by name to the three then-existing penal institutions in one procedural section of the act, it is clear from the text of the title and other sections of the act, as well as from the fact that all then-existing institutions were named in that single procedural section, that the Legislature intended 1935 PA 253 to apply to all prison inmates, including those in institutions which became operational after the act was passed. We therefore reverse the Court of Appeals decision upholding the trial court's finding that the act violated the constitutional guarantee of equal protection of the laws.

Since the Court of Appeals did not reach a second issue of vagueness, and since that issue was not properly presented to this Court, we remand this case to the Court of Appeals for consideration of that issue. We do not retain jurisdiction.

I. Facts

The defendant, Hardy Wilson, had been injured on the job during his employment with the Pepsi-Cola Bottling Co. Wilson entered into a redemption through the Bureau of Workers' Disability

Compensation with defendant National Union Fire Insurance Co., Pepsi-Cola's workers' compensation insurer, for the amount of $12,500 or $10,306.51 after the subtraction of costs and attorney fees. At the time of the redemption order, Mr. Wilson was an inmate of the State Prison of Southern Michigan at Jackson.

On July 21, 1982, the Treasurer filed a complaint in Wayne Circuit Court seeking reimbursement under the Prison Reimbursement Act. An ex parte temporary restraining order was issued by that court enjoining National Union from paying the award.

A motion in opposition to the appointment of a guardian under the provisions of the act was filed by defendant Hardy Wilson, and a motion to dismiss was filed by defendant National Union.

At a hearing on October 29, 1982, plaintiffs claimed that National Union had violated the restraining order and had sent a check for $10,306.51 to Mr. Wilson's mother, who had cashed the check and disbursed the funds. Defendants contended that the nonalienability provision of the Workers' Disability Compensation Act, MCL 418.821; MSA 17.237(821) barred the state's action, and that the Prison Reimbursement Act was unconstitutional.

The court took under advisement plaintiff's motion for an order finding National Union in contempt for violating the restraining order, rejected defendants' contention that the workers' compensation statute prevented recovery, but agreed with defendants' constitutional challenges, holding the Prison Reimbursement Act void for vagueness and violative of equal protection.

The Court of Appeals affirmed, 132 Mich App 648; 347 NW2d 770 (1984). On September 26, 1984, 419 Mich 935, we granted leave to appeal.

## II. Introduction

The Prison Reimbursement Act, 1935 PA 253,[1] states in its title that it is:

An act relative to the state penal institutions, and the care and maintenance of prisoners therein; and to provide for the reimbursement of the state on account thereof in certain cases.

Section 2 of the act states:

The warden of the state prison at Jackson, the branch of the state prison at Marquette, and the house of correction and reformatory at Ionia, shall forward to the auditor general a list containing the name of each prisoner, the county from which he was sentenced, term of sentence, date of admission, together with all information available on the financial responsibility of said prisoner. Such report shall be made on blanks to be furnished by the auditor general, and shall be made on or before the tenth day of each month. [MCL 800.402; MSA 28.1702.]

Section 4 outlines procedures for appointment of a guardian and grants discretion to the trial courts to order payment to the state, directing its application to residents of "any of the aforesaid state penal institutions . . . ." MCL 800.404; MSA 28.1704.

Section 4a states

[t]hat upon admission to *any state penal institu-*

_____

[1] In December, 1984, the Legislature enacted an extensive amendment of the act, retitled the State Correctional Facility Reimbursement Act, 1984 PA 282, MCL 800.401 *et seq.;* MSA 28.1701 *et seq.,* effective December 20, 1984. This case deals solely with the act prior to amendment, and all citations in this opinion pertain to the 1935 act.

*tion* the attorney general may file a claim for future maintenance and support of such prisoner with the court from which said prisoner was sentenced, and thereupon the court may make an order making such prisoner's estate or property liable for such future care and support and that such claim shall constitute a lien upon all property, real and personal, of said prisoner. [Emphasis added. MCL 800.404a; MSA 28.1705.]

The defendants, Mr. Wilson and National Union, argue that the act is limited by its plain language to inmates of the three prisons named in § 2, excluding inmates of other state penal facilities, and it therefore offends the Equal Protection Clauses of the United States and Michigan Constitutions by employing a wholly arbitrary classification. US Const, Am XIV; Const 1963, art 1, § 2.

The treasurer, appearing on behalf of the Department of Corrections, admitted at oral argument that the act would be unconstitutional if it were interpreted so as to apply only to residents of the designated prisons. Plaintiff points to the fact that the three penal facilities named were the only state prisons in existence when the act was passed in 1935 and contends that the act was intended to apply to all prisoners and has been so applied by the Department of Corrections.

We perceive the true question in this case to be whether the Prison Reimbursement Act does now in fact apply only to residents of the three named prisons. For the answer, we must look to principles of statutory construction.

### III. PRINCIPLES OF STATUTORY CONSTRUCTION

The primary purpose of statutory construction is to discover and give effect to the intent of the Legislature. *Aikens v Dep't of Conservation,* 387

Mich 495, 499; 198 NW2d 304 (1972); *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). Where the statutory language is of doubtful meaning, a reasonable construction must be given, looking to the purpose of the act. The statute's spirit and purpose should prevail over its strict letter. *Lakehead Pipe Line Co v Dehn,* 340 Mich 25, 35; 64 NW2d 903 (1954).

The defendants argue that the plain meaning of the words used by the Legislature is to limit the reach of the statute to inmates of the three named facilities. They contend that the statute is clear and unambiguous and therefore not subject to judicial interpretation. *City of Lansing v Lansing Twp,* 356 Mich 641, 649; 97 NW2d 804 (1959).

We disagree. Read with the knowledge that the three prison facilities named were the only ones existing in 1935, common sense raises the question whether the Legislature intended 1935 PA 253 to apply to all state penal institutions. In ascertaining the intent of the lawmakers, where the language of a statute is of doubtful meaning, we may examine the conditions and circumstances surrounding its enactment. *People v Hall,* 391 Mich 175, 191; 215 NW2d 166 (1974).

Section 2, in which the three institutions are named, is not primarily concerned with the reach of the act, but rather refers to the wardens of the specified prisons in conjunction with directives regarding the implementation of the statute's provisions. Put another way, the section does *not* say that inmates of these three prisons shall reimburse the state, but rather that the wardens of these three prisons shall provide certain information to the auditor general. There is no suggestion in the language of § 2 that the Legislature intended the reference to the three institutions to restrict the scope of the act and prevent its future

application to inmates of prisons not then in existence.

Sections 4 and 4a are the substantive provisions of the act. Section 4, by referring to the "aforesaid" institutions, may be said to adopt the supposed limit of § 2. Section 4a, however, refers to "any state penal institution . . . ." This disparity in language, read literally, would restrict the operation of some of the act's provisions to the three named prisons, while allowing other provisions to continue to apply to all state prisoners as the system expanded over time. We do not believe the Legislature intended this result. A statute must be read in its entirety and the meaning given to one section arrived at after due consideration of other sections so as to produce, if possible, an harmonious and consistent enactment as a whole. *Williams v Secretary of State,* 338 Mich 202, 207; 60 NW2d 910 (1953).

It has long been the rule in Michigan that a literal construction of the words of a statute will not be given when contrary to the apparent intention of the Legislature. *Heckathorn v Heckathorn,* 284 Mich 677, 681; 280 NW 79 (1938); *L A Darling Co v Water Resources Comm,* 341 Mich 654, 662; 67 NW2d 890 (1955); *People v Lynch,* 410 Mich 343, 353-354; 301 NW2d 796 (1981).

In *Attorney General v Detroit U R Co,* 210 Mich 227, 254; 177 NW 726 (1920), *app dis* 257 US 609 (1921), this Court quoted the following passage from Endlich, Interpretation of Statutes, § 295:

> Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it which

modifies the meaning of the words, and even the structure of the sentence. This is done sometimes by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction . . . that the modifications thus made are mere corrections of careless language, and really give the true intention.

Plaintiff draws our attention to the fact that the Department of Corrections has been applying the act to all inmates of the state penal system. This Court has long recognized that considerable weight should be afforded to a construction placed upon a statute by the department which administers it. *Aller v Detroit Police Dep't Trial Board,* 309 Mich 382, 386; 15 NW2d 676 (1944); *Magreta v Ambassador Steel Co,* 380 Mich 513, 519; 158 NW2d 473 (1968).

Finally, we note that every statute passed by the Legislature is presumed to be constitutional, and a reviewing court should find an act invalid only when there is no reasonable interpretation which will sustain it. *Cady v Detroit,* 289 Mich 499, 505; 286 NW 805 (1939), *app dis* 309 US 620 (1940); *People v McQuillan,* 392 Mich 511, 536; 221 NW2d 569 (1974).

## IV. CONCLUSION

In consideration of the above principles of statutory interpretation, we hold that the Legislature in 1935 intended the Prison Reimbursement Act to apply to all inmates of the state penal system and that it did not, by the directives employed in § 2, intend to withhold the application of the act to inmates of prisons yet to be constructed.

Reversed and remanded.

LEVIN, CAVANAGH, and BOYLE, JJ., concurred with WILLIAMS, C.J.

BRICKLEY, J. (*dissenting*). In this case the majority construes 1935 PA 253 so that it is applicable to all penal institutions in Michigan. Because I believe the statute is clear on its face, and needs no interpretation, I respectfully dissent. When the Legislature is as clear and specific as it was in this instance, we need not, and indeed should not, speculate on legislative intent. There is here absolutely no ambiguity. MCL 800.402; MSA 28.1702 states in part:

> The warden of the state prison at Jackson, the branch of the state prison at Marquette, and the house of correction and reformatory at Ionia, shall forward to the auditor general . . . .

MCL 800.403; MSA 28.1703 states:

> The auditor general shall investigate or cause to be investigated all such reports furnished by said wardens for the purpose of securing reimbursement for the expense of the state of Michigan for the care, custody and control of *said* prisoners. [Emphasis added.]

MCL 800.404; MSA 28.1704 states in part:

> Whenever it shall be found that any person has been admitted to any of the *aforesaid* state penal institutions, as a prisoner, the auditor general, or the prosecuting attorney of the county from which *said* person was so sentenced, shall, if *such person or prisoner* be possessed of any estate, or shall thereafter while he shall remain in *such institution* . . . . [Emphasis added.]

The Legislature could not have more clearly desig-
nated the act to apply to the prisoners of the
"aforesaid state penal institutions."

Had the Legislature intended the act to apply to
all state penal institutions, it could easily have so
provided. Instead, the statute is expressly limited
by its own terms to only three of the state's
prisons. Surely the Legislature must have been
aware at the time of drafting that the number of
state prisons would grow with time, but it did not
provide for this eventuality in the statute. I do not
believe that it is a judicial function to amend the
statute. Indeed, 1935 PA 253 remained unchanged
for virtually half a century until the Court of
Appeals ruled it unconstitutional. I agree with
that Court that

> [i]f the Legislature intended for the Prison Reim-
> bursement Act to cover new penal institutions, it
> could have used a general definition of "state
> penal institution" as found in the reimbursement
> to counties for certain expenses act which was
> later enacted. MCL 800.451; MSA 28.1714(1).[3]

---

[3] The reimbursement to counties for certain expenses act
became effective on February 12, 1978, approximately 43 years
after the enactment of the Prison Reimbursement Act.

---

Accordingly, I would refrain from accepting the
appellant's invitation to rewrite the act for the
Legislature so that it applies to all penal institu-
tions. When we succumb to that temptation, it
helps to form bad judicial habits. I see no compel-
ling circumstances here that should take this case
outside the well-settled rule that "[i]f the language
employed in a statute is plain, certain and unam-
biguous, a bare reading suffices and no interpreta-
tion is necessary." *Dussia v Monroe Co Employees*

*Retirement System,* 386 Mich 244, 248; 191 NW2d 307 (1971).

Also, I do not believe, as the appellant contends, that the act can be salvaged by severing the unconstitutional portions. In effect, the severing and rewording proposed would be a redrafting of the statute. Moreover, the different sections of 1935 PA 253 appear interrelated and interdependent. For example, constitutional deficiencies would still exist if we were to allow § 4a to apply to all penal institutions while limiting § 4. Section 4 gives a prisoner an opportunity to have a guardian appointed and other important procedural rights not found in § 4a. This would allow similarly situated prisoners to be treated differently with no rational basis for doing so.

The Attorney General contends that § 4a is "self-executing" and independent of the rest of the act and that the complaint in this case stated a valid claim under § 4a. I do not agree that a claim has been stated under § 4a. The amended complaint stated in part:

> 5. That Plaintiff has a good reason to believe and does believe that Defendant, Hardy Wilson, has an estate which should be subject to the payment to the State of the expenses paid by the State on behalf of the Defendant as a resident at a State penal institution in accordance with the provisions of MCL 800.401 *et seq.;* MSA 28.1701 *et seq.*

It is clear that the Attorney General was not proceeding under § 4a alone.

I would affirm the judgment of the Court of Appeals.

RYAN and RILEY, JJ., concurred with BRICKLEY, J.